1

2                     UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
3

4   Snow Covered Capital, LLC,

5                   Plaintiff                    Case No. 2:22-cv-01181-CDS-BNW

6       v.                                       **Order Denying Emergency Motion to Stay
                                                 and Granting Motion to Strike Two
7   Jodi Fonfa, et al.,                          "Joinders"**

8                   Defendants                   [ECF Nos. 67, 75, 81, 95]

9

10          Defendant Jodi Fonfa[1] moves for an emergency motion to stay this case, arguing that this

11   action is duplicative of a guaranty case, 19-cv-595, involving Snow Covered Capital, LLC (SCC)

12   that is set for a bench trial in front of the Honorable Andrew P. Gordon later this year.[2] She

13   urges that this case should be stayed pending resolution of 19-cv-595 because failure to do so

14   could "raise the specter of inconsistent decisions in the two matters." Jimmerson Decl., ECF No.

15   67 at 5, ¶ 9. SCC "strong[ly]" opposes Jodi's motion, contending that "there is no 'emergency' and

16   no legitimate basis for the [m]otion to [s]tay" and asserting that Jodi fails to meet her burden of

17   demonstrating the need for a stay. ECF No. 76 at 1. Defendant Evan Fonfa, Jodi's son, filed a

18   joinder to Jodi's motion and another joinder supporting Jodi's reply brief. ECF Nos. 75, 81. SCC

19   seeks to strike both of Evan's joinders on the basis that they are supplemental briefs disguised as

20   joinders. ECF No. 95. Because Evan filed two "joinders" that contain additional argument

21   beyond merely adopting that in Jodi's briefs, he was required to seek leave of court to do so. But

22   he never did, so the two joinders amount to rogue filings. If Evan wished to file his own briefs, he

23

24   [1] For clarity, I refer to her as "Jodi" throughout this order to differentiate her from her son, Evan, who
     shares the same last name. In doing so, I intend no disrespect. For the same reason, I refer to him as
25   "Evan."

26   [2] The parties refer to the other lawsuit by different names. SCC calls it the "guaranty action," while Jodi
     calls it the "deficiency judgment matter." For ease and consistency, I refer to it throughout this order by
     its partial case number, 19-cv-595.

should have either sought the court's leave to do so or filed his own motion to stay. As he did

neither, I grant SCC's motion and direct the Clerk of Court to strike both joinders from the

record. Accordingly, I do not consider either joinder in ruling on Jodi's motion to stay.

As far as the stay motion itself, Jodi fails to identify how the relief she seeks constitutes

an emergency. And in an apparent attempt to delay the resolution of this matter, she argues that

this case and 19-cv-595 are duplicative, without explaining precisely how that is true. Upon

closer inspection, it is evident that the two cases involve different issues. This case is about the

alleged fraudulent transfers that Jodi and Evan made following their husband/father Andrew

Fonfa's death, which rendered him and his estate personally insolvent and unable to repay a loan

for the building of the Lucky Dragon Casino.[3] 19-cv-595, on the other hand, concerns "the

enforce[ment of] a guaranty agreement against Andrew Fonfa and two other [d]efendants" and

how much the guarantors owe SCC. ECF No. 76 at 5, 13. Jodi paints the picture that the

resolution of 19-cv-595 will determine whether SCC is a creditor and thus whether SCC can

bring a claim for fraudulent transfer under Nevada law. But that argument rings false. It is

commonplace for creditors to bring fraudulent-transfer actions separate from guaranty actions,

particularly when they involve different parties, as here. So because there is insufficient overlap

between the two cases and Jodi fails to meet her burden demonstrating the need for a stay—let

alone on an emergency basis—I deny her motion for a stay. This case proceeds along the normal

litigation track.

**I.      Legal standards**

   *A.      Emergency motions*

"Emergency motions should be rare." LR 7-4(b). Such motions must "be accompanied by

a declaration setting forth[ t]he nature of the emergency" and "certifying that, after participation

---

[3] Put simply, Jodi and Evan's alleged "largely unknown actions reduced Andrew Fonfa's net worth from
the $63,670,111 that Andrew Fonfa had represented to SCC in order to obtain the Lucky Dragon loan and
to accept his guaranty, to an estate that now-Executrix Jodi Fonfa valued, in her first inventory, as worth
$3,252,103.87. The missing $60 million was a red flag." ECF No. 76 at 3.

in the meet-and-confer process to resolve the dispute, the movant has been unable to resolve the matter without court action." LR 7-4(a)(1), (3). Under this district's local rules, "[t]he court may determine whether any matter submitted as an 'emergency' is, in fact, an emergency." LR 7-4(c).

   B.  *Motions to stay*[4]

   Under the "traditional" standard for a stay, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

II.  Discussion

   A.  *Evan filed two supplemental briefs in support of Jodi's emergency motion for a stay without first obtaining leave of court. I strike both filings and disregard them.*

   I begin by addressing Evan's two "joinders." Jodi filed her emergency motion to stay on April 14, 2023, and Evan filed his "joinder" to that motion on April 28, 2023, which was the deadline for SCC's response to the motion. ECF Nos. 67, 75. After Evan's joinder was filed, SCC filed its response, attempting to address both Jodi and Evan's arguments, despite having only hours in which to respond to Evan's. ECF No. 76. Jodi then filed her reply brief on May 5, 2023, followed by Evan's joinder on the same day. ECF Nos. 80, 81. On May 26, 2023, SCC filed a motion seeking to strike both of Evan's joinders, arguing that they are de facto supplemental

---

[4] SCC points out that Jodi provides the wrong standard for a stay in her motion. ECF No. 76 at 8–10 (noting that Jodi relies on a local rule specific to stays in the patent-infringement context). SCC's assessment is correct. The rule that Jodi cites to is clearly listed under the "Patent Practice" part of this district's local rules. ECF No. 67 at 15 (citing LPR 1-20). In fact, the rule begins with this sentence: "The court may order a stay of litigation pending the outcome of any reexamination or review proceeding before the United States Patent and Trademark Office that concerns a patent at issue in the federal court litigation." LPR 1-20. I caution Jodi's counsel to use more care in its interpretation and application of the local rules in the future, as there are several parts of them that apply differently depending on the type of case involved (e.g., rules concerning magistrate judges, electronic case filing, civil practice, patent practice, criminal practice, and special proceedings and appeals).

1  briefings that Evan filed without seeking the court's leave to do so. ECF No. 95. Jodi has not yet

2  filed a response, but because I am ruling on the underlying motion for a stay—which involves

3  the two joinders—I address the motion to strike here as well. *See* Fed. R. Civ. P. 1 ("These

4  rules . . . should be construed, administered, and employed by the court . . . to secure the just,

5  speedy, and inexpensive determination of every action and proceeding.").

6        Some district courts have local rules differentiating between "substantive joinder" and

7  "joinders of simple agreement." *See, e.g., Hyland v. Office of Housing & Cmty. Dev.*, 2018 WL 4119903, at

8  *3 (D. Haw. Aug. 29, 2018) (cleaned up) ("A substantive joinder to a motion . . . must be based

9  on a memorandum supplementing the motion, whereas a joinder of simple agreement may be

10  filed at any time . . . and need not be accompanied by a memorandum."). However, the local rules

11  of this district make no such distinction. Under this district's local rules, "[s]upplementation

12  [is] prohibited without leave of court. A party may not file supplemental pleadings, briefs,

13  authorities, or evidence without leave of court granted for good cause. The judge may strike

14  supplemental filings made without leave of court." LR 7-2(g).

15        SCC characterizes Evan's "'joinders' . . . [as] unauthorized supplemental briefs, filed

16  without leave of court[.]" ECF No. 95 at 1. It contends that "Evan's 'joinder' [is] an entirely new

17  defense brief regarding the [m]otion to [s]tay" and is "not a joinder, but a companion motion." *Id.*

18  at 3. It argues that SCC had only a few hours to respond to Evan's joinder because he filed it on

19  the same day on which SCC's response to the underlying motion to stay was due. *Id.* SCC asserts

20  that "[t]he net result of all of this back[-]door briefing" is that "[d]efendants have filed four

21  briefs regarding the [m]otion to [s]tay. SCC has filed one." *Id.* at 4. "[B]ecause the motion-

22  response-reply cycle had been completed," these two "full-fledged brief[s]" should be stricken.

23  *Id.* at 3.

24        It is true that "incorporation of another party's argument (much like joinder to a motion)

25  is an accepted practice in appropriate situations . . . and saves the court having to read the same

26  arguments and authorities multiple times." *Tessema v. United Steel, Paper and Forestry, Rubber, Mfg.,*

4

1 | *Energy, Allied Indus. and Serv. Workers Int'l Union*, 2014 WL 4656226, at \*3, n.l (D. Nev., Sept. 17,

2 | 2014). But that is not the case here. SCC correctly asserts that Evan's "joinders" are not, in fact,

3 | joinders, but are supplemental, companion briefs to Jodi's motion to stay. Evan's joinders raise

4 | new arguments and do not merely incorporate by reference or adopt Jodi's motion. In some

5 | districts, they would be considered "substantive joinders," not "joinders of simple agreement,"

6 | because they add new arguments. Because of the substantive content of Evan's joinders, I find

7 | that they constitute supplemental briefings under Local Rule 7-2(g). Nothing in the record

8 | indicates that Evan ever sought to obtain leave of court before filing these rogue documents. Nor

9 | did I ever find that good cause existed to permit such supplementation. So under Local Rule 7-

10 | 2(g), I order the Clerk of Court to strike Evan's two joinders (ECF Nos. 75, 81) from the record. I

11 | also note that I do not consider the arguments within those two documents in ruling on the

12 | motion to stay. Instead, I rely solely on Jodi's motion, SCC's response brief (only to the extent

13 | that it addresses Jodi's motion), and Jodi's reply brief.

14 |         B.       *Jodi fails to demonstrate that a true emergency exists, but even if it did, I am unconvinced that*

15 |               *the relief sought in this action and 19-cv-595 are duplicative, so I deny Fonfa's emergency motion*

16 |               *for a stay.*

17 |             1.       *These circumstances do not constitute an emergency.*

18 |     "Emergency motions should be rare." LR 7-4(b). And "[t]he court may determine

19 | whether any matter submitted as an 'emergency' is, in fact, an emergency." LR 7-4(c). "For a

20 | motion to be an 'emergency' to a federal court, the situation typically must involve some

21 | significant degree of urgency, severity, and irreparability[.]" *Goldberg v. Barreca*, 2017 WL 3671292,

22 | at \*5 (D. Nev. Aug. 24, 2017). In compliance with LR 7-4(a), Jodi's motion includes a declaration

23 | from her counsel declaring that "[t]he nature of the emergency is that SCC has submitted the

24 | very same expert reports in both this action and [19-cv-595], in which a bench trial has been set

25 | for November 7, 2023." ECF No. 67 at 5. The declaration continues that "[w]ithout an immediate

26 | stay in this matter, Jodi will be required to submit expert reports on the very same subject

1 | matters as were submitted by the defendants . . . in [19-cv-595], specifically, (i) the fair market

2 | value of the Lucky Dragon casino and (ii) the amount of indebtedness of the defendants in that

3 | matter, including Andrew Fonfa." *Id.* (emphasis removed).

4 |       SCC rebuts this, citing to the local rules and my chambers practices and arguing that

5 | although Jodi's counsel's declaration "meets the formal requirements[, w]hat it lacks is an

6 | articulation of a genuine emergency." ECF No. 76 at 15. It further contends that rather than a

7 | stay, a "commonsense restructuring of the schedule" in this case could achieve the result that

8 | Jodi is truly seeking, which is seemingly to extend the expert disclosure and expert discovery

9 | deadlines. *Id.* at 16, n.38. Jodi does not address this argument in her reply brief. *See generally* ECF

10 | No. 80. This is precisely the kind of "emergency" motion that LR 7-4 aimed to prevent. Jodi

11 | perfunctorily addresses the emergency nature of this motion, and she does not provide sufficient

12 | justification for it. Whether there is an overlap of the experts in this case and 19-cv-595 simply

13 | does not amount to an emergency.

14 |                   2.       *Under Nevada's codification of the Uniform Fraudulent Transfers Act, SCC is*

15 |                           *permitted to bring this fraudulent-transfer action separate from the other case*

16 |                           *involving the guarantors' debt to SCC— a stay would be improper.*

17 |       Disappointingly, all of the cases that Jodi relies on throughout her motion—from the

18 | legal standards to the argument itself—differ markedly from the circumstances of this case.[5] To

19 | <hr>

20 | [5] Jodi's counsel should avoid quoting cases in a vacuum. For example, she cites to one case that involved a defendant's motion to stay a patent infringement matter "until the conclusion of the United States Patent and Trademark Office's Patent Trial and Appeal Board's . . . review of the two patents at issue in this

21 | case[.]" *Applications in Internet Time, LLC v. Salesforce.com, Inc.*, 2015 WL 8041794 at *1. As discussed above, the stay analysis in patent cases is different than the analysis in a case like this one, so this case is

22 | inapplicable—as is yet another patent case that Jodi cites to. ECF No. 67 at 16 (citing *Ricoh Co., Ltd. v. Aeroflex Inc.*, 2006 WL 3708069, at *5 (N.D. Cal. Dec. 14, 2006)). She also cites to a case involving the

23 | doctrine of abstention, in which the Ninth Circuit affirmed the district court's decision to abstain from deciding a case after the same action had already been pending in state court for upwards of two years.

24 | *Am. Int'l Underwriters (Phil.), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253 (9th Cir. 1988). This, too, is inapplicable here. Oddly, Jodi quotes from an order ruling on a motion in limine and limiting the number of expert

25 | witnesses at trial because of overlap in their testimonies. ECF No. 67 at 20 (quoting *McCabe v. Ramparts, Inc.*, 2012 WL 2873842, at *1 (D. Nev. July 13, 2012)). Jodi applied the quote from that case completely out

26 | of context. She attempts to convince me that the mere fact that the experts in this case and in 19-cv-595 are the same serves as a sufficient basis for a stay because the *McCabe* court found "that [the multiple

support its argument that a motion to stay is inappropriate, SCC relies on an unpublished

decision out of this district, *Wells Fargo Bank, Nat. Ass'n v. Iny*, 2014 WL 5364120 (D. Nev. 2014).

ECF No. 76 at 2, 10–14. It contends that in that case, Judge Du "reject[ed] a motion to

stay . . . because there was 'substantial doubt' about the outcome of the guarantee case upon

which the stay was to be premised, [so] a stay of the action . . . would not be appropriate." *Id.* at

2. Jodi accuses SCC of "near-total reliance on" the *Iny* case and argues that the case is

inapplicable because it involved one federal case and one state case, while the issue here involves

two federal cases. ECF No. 80 at 4, 8–9. Despite this critique of SCC for relying on *Iny*, Jodi offers

zero case law for me to rely upon instead.[6]

It is true that *Iny* did not involve two federal cases. But in most other respects, it appears

to be mostly analogous to this case. In *Iny*, a judge in this district denied the defendants' motion

to stay the federal fraudulent-transfer case pending resolution of the related guaranty action in

Arizona state court. *Iny*, 2014 WL 5364120 at *2. The *Iny* judge explained that, much like here:

> Plaintiff does not seek enforcement of the [g]uarantees or assert any deficiency claims against the [g]uarantors. Instead, [it] asserts fraudulent transfer claims, alleging that [p]laintiff has a right to payment under the [g]uarantees, and that [d]efendants were involved in the transfer of assets with the purpose of hindering, delaying[,] or defrauding their creditors, including [p]laintiff.

*Id.* at *1. The *Iny* judge further classified the fraudulent-transfer claims in the federal case as

"ancillary to the claims in the" state case. *Id.* at *2. I do the same here. While the general factual

allegations between the instant case and 19-cv-595 are similar—as no party contests—the type

---

experts] are redundant and cumulative with respect to the areas of inquiry that the Court finds may be helpful to the trier of fact.'" *Id.* (quoting *McCabe*, 2012 WL 2873842, at *1) (alterations in original). To the extent that there is a connection between that court's decision to limit expert testimony at trial and my decision here—whether to grant a stay seemingly because the experts in this case and 19-cv-595 are the same—Jodi fails to articulate it.

[6] In fact, Jodi cites to a singular case in her reply brief—other than *Iny* and an inapplicable United States Supreme Court case, *Colo. River Water Conservation Dist. v. United States* (424 U.S. 800 (1976)) that the *Iny* judge relied upon related to abstention. ECF No. 80 at 11 (citing *United States v. Castillo-Basa*, 483 F.3d 890, 897 (9th Cir. 2007)). That lone case is a criminal matter involving collateral estoppel and the Double Jeopardy Clause and does not bear on my decision in this civil fraudulent-transfer matter.

1    of relief sought in each case is quite different and even involves several different parties.[7] SCC

2    brought this case against Jodi, Evan (individually and as trustee of the Evan Fonfa 2018 Trust),

3    and The Evan Fonfa Trust. It brought 19-cv-595, on the other hand, against William Weidner,

4    David Jacoby, and the Estate of Andrew Fonfa.[8] Neither Jodi nor Evan—nor Evan's trust—are

5    named defendants in 19-cv-595.

6         Jodi relies, in part, on the doctrine of collateral estoppel to argue that "'when an issue of

7    ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

8    litigated between the same parties in any future lawsuit.'" ECF No. 67 at 16 (quoting *Ashe v.*

9    *Swenson*, 397 U.S. 436, 443 (1970)). But no "valid and final judgment" has been issued in 19-cv-

10   595. As Jodi herself admits, the trial in that case has not yet occurred and is not scheduled to be

11   held until November of this year. She also makes what SCC calls the "not-a-creditor" argument,

12   contending that SCC is not a creditor and therefore cannot bring a fraudulent-transfer claim

13   against the Fonfas. ECF No. 76 at 5–6.

14        "The Uniform Fraudulent Transfers Act (UFTA), codified as Chapter 112 of the Nevada

15   Revised Statutes [(NRS)], 'is designed to prevent a debtor from defrauding creditors by placing

16   the subject property beyond the creditors' reach.'" *Donell for J.T. Wallenbrock & Assocs.*, 2010 WL

17   11635980, at *2 (D. Nev. Apr. 6, 2010) (quoting *Herup v. First Boston Fin., LLC*, 162 P.3d 870, 872

18   (Nev. 2007)). The Nevada Supreme Court has recognized that it was the Nevada "Legislature's

19   intent that [courts] interpret the UFTA in Nevada to conform to other states' interpretations of

20   their respective versions of the UFTA[.]" *Herup*, 162 P.3d at 876. With that in mind, I turn to an

21   Oregon Supreme Court case examining the Oregon UFTA equivalent, *Rowden v. Hogan Woods, LLC.*

22   476 P.3d 485, 499–500 (Or. Ct. App. 2020) (quoting *Iny*, 2014 WL 5364120, at *4) (collecting

23   cases). In *Rowden*, the Oregon Supreme Court found that "[o]ther courts have universally

---

[7] Jodi provides a chart comparing SCC's allegations in its complaint in this case to the facts in the joint pretrial order in 19-cv-595. ECF No. 67 at 10–14. But as SCC rightly concludes, the chart "compares the <u>background facts</u> alleged . . . not the very different lawsuits that arose, only in part, from that same general background." ECF No. 76 at 4.

[8] I exclude several defendants who were named in the lawsuit initially but have since been terminated.

1  rejected the narrow view of 'right to payment' and ripeness" advocated by the defendants,

2  holding that "[b]ased on the plain text of the statute . . . the UFTA recognizes a party's right to

3  seek relief when a fraudulent transfer is made in the midst of dispute over the right to payment."

4  *Id.* at 500. It thus reversed the state district court's conclusion "that an unsatisfied judgment

5  against [the defendant] was a necessary precursor to plaintiffs' UFTA claim." *Id.*

6         Under Nevada law, a "claim" in the fraudulent-transfer context is defined as "a right to

7  payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed,

8  contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured[,] or

9  unsecured." NRS § 112.150(3). And a "creditor" "means a person who has a claim. *Id.* at (4). Based

10  on the plain meaning of these definitions and their application in other states' versions of UFTA,

11  SCC is a creditor who may bring a claim. It alleges that the Fonfas fraudulently transferred

12  funds, which is the heart of this case. Whether SCC will succeed on its fraudulent-transfer

13  claims is uncertain, but whether it may bring the claim in this lawsuit is clear: yes. A stay is thus

14  improper, so I deny Jodi's motion.

15  **III.      Conclusion**

16         IT IS THEREFORE ORDERED that Jodi Fonfa's emergency motion to stay **[ECF No.**

17  **67] is DENIED.**

18         IT IS FURTHER ORDERED that to the extent Evan Fonfa also seeks a stay in his joinder

19  to the emergency motion, **[ECF No. 75] is DENIED.**

20         IT IS FURTHER ORDERED that SCC's motion to strike **[ECF No. 95] is GRANTED.**

21  The Clerk of Court is directed to STRIKE Evan Fonfa's joinders **[ECF Nos. 75, 81]** from the

22  docket.

23         DATED: June 8, 2023

24

25                                            _____
                                      Cristina D. Silva
                                      United States District Judge

26